**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-11130

Non-Argument Calendar

————————————

WANDA JEAN-BAPTISTE,

*Plaintiff-Appellant,*

*versus*

CITY OF MIAMI,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:23-cv-22670-MD

————————————

Before GRANT, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Wanda Jean-Baptiste, a black police officer, appeals the district court's grant of summary judgment to the City of Miami on her race discrimination and retaliation claims. Because she

failed to put forward enough evidence for a reasonable jury to find in her favor, we affirm.

## I.

In 2021, Jean-Baptiste was a police officer for the City of Miami working in Internal Affairs. In this role, she conducted an investigation that treated Deputy Chief Ronald Papier *as a witness* (in an investigation of someone else) but ended up authoring a reprimand of him recommending his termination based on that interview. Papier was terminated.

When Papier complained that Jean-Baptiste's investigation had violated his rights under Florida's Officer Bill of Rights by treating him as a witness rather than the principal subject of the investigation, Internal Affairs opened an investigation into Jean-Baptiste. During that investigation, Jean-Baptiste was temporarily transferred out of Internal Affairs, and when it was completed, she received a 40-hour suspension and her transfer out of Internal Affairs became permanent. Later, Jean-Baptiste sued the City, raising three claims: (1) retaliation in violation of the Florida Whistleblower's Act, (2) retaliation in violation of Title VII, and (3) race discrimination in violation of Title VII.

The district court granted the City's motion for summary judgment. The court found that the City was entitled to summary judgment on both retaliation claims because it had established the absence of a genuine dispute of material fact as to the causation element of those claims. As for the racial discrimination claim, the court found that Jean-Baptiste had not and could not "put forward

sufficient evidence to establish a *prima facie* case" of racial discrimination and that even giving her the benefit of the doubt and reviewing the entire record, there was "an absence of material facts sufficient to create a genuine dispute regarding whether other individuals outside of her protected class were treated differently" than she was.

On appeal, Jean-Baptiste argues that the district court erred in granting summary judgment to the City on each of her claims.

## II.

We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in her favor. *See Oakes Farms Food & Distrib. Servs., LLC v. Adkins*, 154 F.4th 1338, 1343 (11th Cir. 2025). Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law because there is no genuine dispute as to some material fact. Fed. R. Civ. P. 56(a). There is a genuine issue of material fact when the evidence is such that a reasonable jury could find in favor of the nonmoving party. *McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024).

## III.

Before turning to the individual claims, we note that we "may examine only the evidence which was before the district court" at the time it decided the motion for summary judgment. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 n.3 (11th Cir. 1992). In her appellate briefing, Jean-Baptiste repeatedly cites to portions of the record that were stricken by the district court before it granted

summary judgment. She does not, however, acknowledge that any of her evidence was stricken—not even in response to the City's argument that we could not consider such evidence—let alone offer any arguments or legal authority to challenge the district court's grant of the motion to strike. The district court did not consider the stricken portions of the record at summary judgment, and because Jean-Baptiste has abandoned any challenge to the striking of those portions of the record, we do not consider them either. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

Both of Jean-Baptiste's retaliation claims require her to prove that (1) she engaged in statutorily protected conduct, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected conduct and the adverse action. *Fla. Dep't of Child. & Fams. v. Shapiro*, 68 So. 3d 298, 305–06 (Fla. Dist. Ct. App. 2011) (Florida Whistleblower's Act); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (Title VII).

For her state law claim, the district court found that Jean-Baptiste had failed to show "a causal connection between any of her purported protected activities and the adverse employment actions she suffered." On appeal, she argues that she did provide evidence of a causal connection, that the City's stated reasons for the adverse actions were pretextual, and that the timing of the adverse actions was very suspicious. But those portions of her

briefing do not include a single citation to the record.[1] And we are not "required to mine the record, prospecting for facts that [Jean-Baptiste] overlooked and could have, but did not, bring to the surface" in her briefing. *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011). By failing to point to evidence in the record that would support this claim, Jean-Baptiste has abandoned it.

For her Title VII retaliation claim, Jean-Baptiste alleges that an email she sent on October 3, 2022, complaining about race-based discrimination in the discipline she received, was a protected activity. And she seems to allege that her permanent transfer and 40-hour suspension were adverse employment actions in retaliation for that email. However, that discipline was the result of an investigation into Jean-Baptiste that was launched following a complaint filed in December of the previous year, and the Disciplinary Review Panel had already recommended the permanent transfer and 40-hour suspension in July 2022, three months before her purported protected activity. Although this discipline was not formally upheld until a few weeks after Jean-Baptiste's email and did not go into effect until the following months, the fact that it was already in process is fatal to her claim.

---

[1] The background portion of her brief contains a number of citations to the record on appeal, but on closer examination, almost all of them turn out to be citations to Jean-Baptiste's own filings, rather than to actual evidence. Regardless, Jean-Baptiste was required to cite the record in support of her argument, not just in the introductory section of her brief, and she did not. *See Sapuppo*, 739 F.3d at 681.

In retaliation cases, this Court has explained that "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Because the discipline Jean-Baptiste ultimately received had already been recommended months before her purportedly protected activity, her claim fails for lack of causal connection.

Turning to the racial discrimination claim, we emphasize that "the ultimate question in a discrimination case is whether there is enough evidence to show that the reason for an adverse employment action was illegal discrimination." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 941 (11th Cir. 2023). So on appeal, we simply ask whether Jean-Baptiste produced enough evidence. She did not.

Jean-Baptiste's only real argument in defense of her discrimination claim is that she established Title VII comparators "beyond dispute."[2] A plaintiff may provide circumstantial evidence of racial discrimination by showing "systematically better treatment of similarly situated employees." *Lewis v. City of Union*

---

[2] She also reiterates her argument below that the "City rests on sham affidavits," but she points to nothing in the record to support this bare accusation. And she claims that the "compelling testimony" in the deposition of a former police chief "is sufficient to warrant denial of the City's motion," but nothing in any of the passages she quotes says anything about race or discrimination.

*City*, 934 F.3d 1169, 1185 (11th Cir. 2019).  Here, Jean-Baptiste points to several paragraphs of her own affidavit, in which she claims that two other internal affairs detectives were found guilty of intentionally violating an officer's rights under the Officer Bill of Rights and that she emailed the City to complain about "illegal discrimination" in the form of "more favorable treatment . . . based on race."[3]  There are too many things we don't know about these other detectives—for example, whether they had similar records to Jean-Baptiste or what (if any) discipline they received—to say that they are similarly situated.  Not to mention that, from our review of the record, only Jean-Baptiste's misconduct seems to have resulted in someone being wrongfully terminated, a fact which would cut sharply against comparability.  In the end, Jean-Baptiste simply did not produce enough evidence for a reasonable jury to find racial discrimination.

★    ★    ★

Jean-Baptiste has not shown that she presented enough evidence to create a genuine dispute of material fact with regard to the necessary elements of any of her claims, so we **AFFIRM**.

---

[3] As explained above, we do not consider the cited paragraphs which were stricken by the district court.